## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Joseph Todd Hutchinson and**
**Jennifer Lynn Hutchinson,**
**Plaintiffs Below, Petitioners**

**FILED**

**September 18, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 19-1079** (Cabell County 17-C-149)

**Mark Forest Underwood, Patricia Jennings, and**
**Underwood Law Office,**
**Defendants Below, Respondents**

### MEMORANDUM DECISION

Petitioners Joseph Todd Hutchinson and Jennifer Lynn Hutchinson, self-represented litigants, appeal the October 21, 2019, order of the Circuit Court of Cabell County awarding judgment as a matter of law at the close of petitioners' evidence to Respondents Mark Forest Underwood, Patricia Jennings, and the Underwood Law Office (collectively, "respondents") and the circuit court's November 1, 2019, order denying petitioners' motion for a new trial. Respondents, by counsel Kevin A. Nelson and Arie M. Spitz, filed a response in support of the circuit court's orders. Petitioners filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners retained respondents to represent them in a proceeding before the West Virginia Court of Claims ("Court of Claims").[1] According to the Court of Claims' January 20,

---

[1]The West Virginia Court of Claims is now known as the West Virginia Legislative Claims Commission. *State ex rel. Ladanye v. West Virginia Legislative Claims Commission*, 242 W. Va. 420, __, 836 S.E.2d 71, 78 (2019) (citing W. Va. Code § 14-2-4 (2019)). The function of this legislative body is to make "a recommendation to the Legislature based upon a finding of moral obligation, and the enactment process of passage of legislation authorizing payments of claims recommended by the court is at legislative discretion." *Id.* (quoting W. Va. Code § 14-2-28 (2014)). As we noted in *Ladanye*, "[o]ur State constitution provides sovereign immunity protections and does not allow for suits to be brought against the State. *Id.* at __, 836 S.E.2d at 76-77 (citing W. Va. Const. art. VI, § 35).

1

2014, decision, petitioners filed a claim against the West Virginia Division of Highways ("DOH") alleging that the DOH was "responsible for the maintenance of the roadway and the culvert that abuts [petitioners'] property located" on Aracoma Road in Huntington, West Virginia, and that "runoff from Aracoma Road clogged or crushed a culvert which caused or contributed to damage to [petitioners'] [p]roperty." Petitioners and the DOH reached a settlement in the amount of $85,000 in "a full and complete satisfaction of any and all past and future claims that [petitioners] may have against [the DOH] arising from the matters described in said claim." Pursuant to the settlement, petitioners agreed that:

> Five Thousand Dollars ($5,000.00) of the settlement sum is expressly earmarked for [petitioners] to hire a contractor of their choosing to clear the culvert that abuts [petitioners'] [p]roperty and [petitioners] shall be solely responsible for directing such work and shall defend, protect, and indemnify [the DOH] from and against any such claims or liabilities arising from such work. [Petitioners] further agreed that the sum to be paid herein shall forever bar [petitioners] or any future owners of the [p]roperty from any claim against the [DOH] arising from the [d]amages as identified in the parties' stipulation.

Based on the settlement of petitioner's claim against the DOH, the Court of Claims recommended to the Legislature that it authorize an award of $85,000 to petitioners. As respondents' fee, respondents received 40% of the $85,000 subsequently awarded to petitioners.

On March 3, 2017, petitioners filed the instant civil action against respondents in the Circuit Court of Cabell County, alleging that respondents breached a fiduciary duty that they owed to petitioners in settling petitioners' claim against the DOH. Petitioner sought $400,000 in compensatory damages and $300,000 in punitive damages. On March 30, 2017, respondents filed a motion for a more definite statement, which was granted by an order entered on May 25, 2017. On June 22, 2017, petitioners filed a supplemental complaint specifically alleging that respondents failed to inform petitioners that the settlement with the DOH would bar future claims against the DOH regarding the culvert abutting their property. On July 13, 2017, respondents filed an answer. The parties disputed whether petitioners' claim was for breach of a fiduciary duty or for legal malpractice.

Prior to trial, respondents challenged petitioners' service of process on the individual respondents, prompting the circuit court to provide petitioners with additional time to complete service of process, and petitioners thereafter successfully served each respondent. On July 24, 2019, respondents filed a motion to dismiss the civil action, alleging that petitioners were engaging in serious litigation misconduct by threatening respondents, their attorneys, and potential witnesses. By order entered on September 5, 2019, the circuit court denied the motion.

The circuit court held the trial on September 4 and 5, 2019. After petitioners rested their case, respondents moved for judgment as a matter of law pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure, arguing that no reasonable jury could find in petitioners' favor based on the evidence they presented. After argument by the parties, the circuit court awarded judgment as a matter of law to respondents. By order entered on October 21, 2019, the circuit court found that petitioners' evidence was insufficient to persuade a jury to find in petitioners'

2

favor because their evidence could not establish all of the elements of either a breach of fiduciary duty or a legal malpractice claim. On October 28, 2019, petitioners filed a motion for a new trial. By order entered on November 1, 2019, the circuit court denied the motion, thereby rejecting petitioners' argument that they were not allowed to call all of the witnesses and introduce all of the documentary evidence that they wished to present during their case-in-chief.

Petitioners now appeal the circuit court's October 21, 2019, and November 1, 2019, orders. We review the circuit court's award of judgment as a matter of law to respondents pursuant to the following standard:

> "'The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a [judgment as a matter of law] will be reversed.' Syllabus Point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996)." Syl. pt. 5, *Smith v. First Community Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002).[2]

Syl. Pt. 1, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, 223 W. Va. 209, 672 S.E.2d 345 (2008) (Footnote added). With regard to the circuit court's denial of petitioners' motion for a new trial, "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done[.]" *In re State Pub. Bldg. Asbestos Litig.*, 193 W. Va. 119, 124, 454 S.E.2d 413, 418 (1994) (quoting 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 2803 at 32-33 (1973)) (Footnotes omitted).

---

[2]Rule 50(a) of the West Virginia Rules of Civil Procedure provides:

**(a) Judgment as a Matter of Law.**

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

On appeal, petitioners raise fifteen assignments of error. Respondents counter that petitioners raise issues that the circuit court resolved in petitioners' favor such as allowing petitioners additional time to serve each respondent and denying respondents' motion to dismiss the civil action due to petitioners' alleged misconduct.[3] Petitioners argue that "[t]he point is not that . . . [p]etitioners prevailed in the lower court" on certain issues, but that the circuit court generally allowed respondents to obstruct petitioners' opportunity to be heard. *See* Syl. Pt. 2, *Simpson v. Stanton*, 119 W. Va. 235, 193 S.E. 64 (1937) (holding that "[t]he due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice *and the right to be heard*") (Emphasis added); *State ex rel. Peck v. Goshorn*, 162 W. Va. 420, 422, 249 S.E.2d 765, 766 (1978) (same).

Upon our review of petitioners' assignments of error, we find that many of the assignments are duplicative.[4] Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal," and that "[t]he Court may disregard errors that are not adequately supported by specific references to the record on appeal."[5] "Although we liberally

---

[3]On April 24, 2020, petitioners filed a "motion for default judgment" with this Court, alleging that respondents failed to serve petitioners with a copy of the response. We deny that motion because such a motion is not recognized by the West Virginia Rules of Appellate Procedure. We further reject petitioners' argument that respondents failed to serve petitioners with a copy of the response as the certificate of service attached thereto states that the response was served on petitioners on April 16, 2020.

[4]Petitioners' assignments of error are the following: (1) whether petitioners' cause of action was for a breach of a fiduciary duty or legal malpractice; (2) whether all three of the individual respondents were properly served; (3) whether all three of the individual respondents were properly served in March of 2017; (4) whether respondents and their attorneys slandered petitioners in court proceedings, in court filings, and to the general public; (5) whether petitioners were prevented from calling their subpoenaed witness through the use of false information; (6) whether respondents' attorneys made false and inflammatory statements about petitioners to potential witnesses; (7) whether the circuit court erred in refusing to allow petitioners to introduce their documentation into evidence; (8) whether the circuit court erred in requiring petitioners to serve the three individual respondents on multiple occasions; (9) whether the circuit court erred in ensuring that all three of the individual respondents were properly served; (10) whether respondents and their attorneys committed perjury; (11) whether petitioners threatened respondents, respondents' attorneys, and other persons; (12) whether respondents' attorneys' labeling of Petitioner Joseph Todd Hutchinson as an "al-Qaeda spokesman" was improper; (13) whether respondents' attorneys made numerous defamatory statements about petitioners; (14) whether the circuit court expressed aggravation with petitioners' attempts to discover the source of the false information about them; and (15) whether petitioners were prevented from calling one witness when that witness became hostile to them during pre-trial.

(continued . . .)

4

construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but [which] are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996); *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (finding that cursory treatment of an issue is insufficient to raise it on appeal).

Here, we find that the only issues we need to address are petitioners' arguments that (1) the circuit court erred in finding that petitioners' evidence was insufficient to persuade a jury to find in petitioners' favor because their evidence could not establish all of the elements of either a breach of fiduciary duty or a legal malpractice claim; and (2) the circuit court did not permit petitioners to call all of the witnesses or introduce all of the documentary evidence they wished to present during their case-in-chief. With regard to these issues, we find that the circuit court properly resolved both issues in its October 21, 2019, order awarding respondents judgment as a matter of law pursuant to Rule 30 and/or its November 1, 2019, order denying petitioners' motion for a new trial.

Having reviewed the circuit court's October 21, 2019, "Final Order Granting Defendants' Motion for Judgment as a Matter of Law," and its November 1, 2019, "Order Denying Plaintiffs' Motion for New Trial," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions. The Clerk is directed to attach a copy of each order to this memorandum decision. Accordingly, we conclude that the circuit court's award of judgment as a matter of law to respondents and denial of petitioners' motion for a new trial were not erroneous.

For the foregoing reasons, we affirm the circuit court's October 21, 2019, and November 1, 2019, orders.

Affirmed.

**ISSUED:** September 18, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[5]On March 27, 2020, respondents filed a motion to dismiss the appeal, arguing that we should decline to review all fifteen of petitioners' assignments of error pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. We deny this motion as moot.

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

JOSEPH TODD HUTCHINSON and
JENNIFER LYNN HUTCHINSON,

      Plaintiffs,

v.

                                Civil Action No. 17-C-149
                                Judge Gregory L. Howard, Jr.

MARK FOREST UNDERWOOD,
PATRICIA JENNINGS, and
UNDERWOOD LAW OFFICE,

      Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR NEW TRIAL

On this day, came the Court to review the record in this matter and consider *Plaintiffs'*
*Motion for New Trial* ("*Motion*"), which Plaintiffs Joseph Todd Hutchinson and Jennifer Lynn
Hutchinson filed pro se on October 28, 2019. Having fully studied the motion, the record, and the
applicable law, the Court makes the following findings of fact and conclusions of law:

1.      The Court entered the *Final Order Granting Defendants' Motion for Judgment as*
*a Matter of Law* ("*Judgment Order*") on October 21, 2019.

2.      Plaintiffs filed the *Motion* on October 28, 2019.

3.      Plaintiffs' *Motion* was timely filed. *See* W. Va. R. Civ. P. 59(b) ("Any motion for
a new trial shall be filed not later than 10 days after the entry of the judgment.").

4.      Through the *Motion*, Plaintiffs ask that the Court grant them a new trial pursuant to
Rule 59(a)(1) of the West Virginia Rules of Civil Procedure.

5.      Rule 59(a)(1) permits the trial court to grant a motion for a new trial, "in an action
in which there has been a trial by jury, for any of the reasons for which new trials have heretofore
been granted in actions at law." W. Va. R. Civ. P. 59(a)(1).

**192**

6.      "[A] trial judge should rarely grant a new trial." *Morrison v. Sharma*, 200 W. Va. 192, 194, 488 S.E.2d 467, 469 (1997).

7.      "[A] new trial should not be granted 'unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done[.]'" *Id.* (quoting *In re State Public Building Asbestos Litigation*, 193 W. Va. 119, 124, 454 S.E.2d 413, 418 (1994)).

8.      Harmless errors cannot justify granting a motion for a new trial. *See* W. Va. R. Civ. P. 61 ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

9.      Grounds for a motion for a new trial "must be stated with particularity." Syl. pt. 3, *Steptoe v. Mason*, 153 W. Va. 783, 172 S.E.2d 587 (1970). "[I]f this is not done the motion should not be considered. Merely stating that 'The verdict is contrary to the evidence' has been held not to be sufficient to meet the requirements of stating the grounds with particularity." *Id.* at 790, 172 S.E.2d at 591.

10.     No hearing or responsive briefing is needed for the Court to rule on the motion.

**A. "This matter was not a legal malpractice matter." (*Motion* 1).**

11.     It appears Plaintiffs are arguing in the *Motion* that the Court's determination in the *Judgment Order* that "Plaintiffs' cause of action is professional malpractice, not breach of fiduciary duty," (*Judgment Order* 6), constituted error warranting a new trial.

12.     In support of this position, Plaintiffs argue, "The Defendants' failure to inform their clients, the Plaintiffs, of the full contents of the stipulation proves Breach of Fiduciary Duty and/or negligence." (*Motion* 2).

13.     The Court continues to find, for the reasons set forth in the *Judgment Order* that Plaintiffs' cause of action was for professional negligence rather than breach of fiduciary duty. (*See Judgment Order* 6–7).

14.     Furthermore, the Court notes it determined that "even if Plaintiffs' cause of action is for breach of fiduciary duty and not professional malpractice, Plaintiffs' cause of action is still subject to judgment as a matter of law." (*Judgment Order* 7).

15.     In granting Defendant's oral motion for judgment as a matter of law, the Court evaluated the elements of *both* causes of action and determined that Plaintiffs failed to present evidence to establish all of the elements of either cause of action. (*See Judgment Order* 7–12).

16.     Thus, even if Plaintiffs' assertion that this matter was not a legal malpractice case were true, it alone could not justify granting Plaintiffs' motion for a new trial.

B.     **"Plaintiffs were denied the right to call the witnesses they subpoenaed because they had been poisoned against Plaintiffs by Judge Farrell contacting Defendant Mark Underwood and Kevin Nelson contacting Plaintiff witnesses." (*Motion* 3).**

17.     Plaintiffs' appear to argue that they should receive a new trial because they were denied the right to call witnesses they subpoenaed.

18.     In the *Motion*, Plaintiffs refer specifically to Jessica Whitmore and James "Bo" Criniti, whom Plaintiffs subpoenaed to appear at trial. (*See Subpoenas* filed on August 29, 2019).

19.     Plaintiffs state that "After Kevin Nelson contacted Plaintiffs' witnesses relaying [] false allegations of threats made by Plaintiff Joseph Hutchinson, Plaintiff witnesses no longer corresponded with Plaintiffs." (*Motion* 2).

**194**

20. The communication between the Honorable Paul T. Farrell, Cabell County Circuit Court Judge and Defendant Underwood, and the communication between Defendants' counsel and Whitmore and Criniti, were discussed at length during a hearing on August 19, 2019 in conjunction with *Defendants' Motion to Dismiss and Memorandum of Law in Support*, which was filed on July 24, 2019.

21. First, the Court has not made any determination as to whether Plaintiff Joseph Hutchinson's acts constituted threats or whether any such "threats" were false.

22. Second, during the August 19, 2019 hearing, the Court said, with regard to the behavior of Plaintiff Joseph Hutchinson, "I think that some of the behavior in this case has been bizarre. It's obviously alarmed defense counsel. I think they're completely right. They shouldn't have to go through that kind of stuff in a case like this." (*Tr.* 25:7–11, Aug. 19, 2019).

23. The Court ultimately denied *Defendants' Motion to Dismiss*, finding that "the acts of the Plaintiffs are not so egregious as to mandate dismissal of their lawsuit." (*See Order Den. Defs.' Mot. to Dismiss Due to the Conduct of the Pls.*, 1, Sept. 5, 2019).

24. The Court did not condone Plaintiff Joseph Hutchinson's acts, and the Court has repeatedly instructed Plaintiffs throughout the pendency of this case to "conduct themselves properly with respect to this case." (*See Order Den. Defs.' Mot. to Dismiss Due to the Conduct of the Pls.*, 1, Sept. 5, 2019).

25. Third, with regard to Defendants and their counsel, the Court said: "Nothing that has been done in this case, in my estimation, which is why I've never found anything the defendants' attorneys or the defendants personally, has been done unethically, has been done inappropriately." (*Trial Tr.* 16:13–17, *Excerpt from* Sept. 5, 2019 at 1:57 p.m.).

26.     Fourth, Plaintiffs' contention that the subpoenaed witnesses no longer corresponded directly with Plaintiffs has no bearing on their ability to call Whitmore and Criniti as witnesses. Plaintiffs have not made any allegation that these witnesses failed to comply with some rule of court or law to communicate directly with Plaintiffs. Furthermore, Plaintiffs filed no motions, either before or during trial, asking the Court to compel Plaintiffs' subpoenaed witnesses to communicate directly with Plaintiffs prior to or during the trial.

27.     All the witnesses Plaintiffs called to testify at trial appeared and testified.

28.     The record is clear that the Court did not refuse to permit Plaintiffs to call the witnesses they subpoenaed to testify at trial; *Plaintiffs chose not to call Whitmore and Criniti during their case in chief* as evidenced by the following exchange:

> MR. HUTCHINSON: But our problem was is [sic] that our witnesses that we chased down and paid to be processed -- served, our witnesses were continuously being badgered by the defense.
> THE COURT: Well, sir, we never got to that stage because you didn't call them. You elected not to call them.
> MR. HUTCHINSON: *I elected not to call them* because they were contacting the defendant after the May 6th post.
> THE COURT: Well, the defense is allowed to talk to witnesses, just as you're allowed to talk to their witnesses. So if there was an issue you felt was there, then you should have put them on the stand and questioned them about badgering or whatever issues you had and I could have dealt with it. When you told me you didn't want to call them, it became a moot issue, in my -- is my point.

(*Trial Tr.* 9:11–10:4, *Excerpt from* Sept. 5, 2019 at 1:57 p.m. (emphasis added)).

29.     The Court further clarified Plaintiffs' decision not to call its witnesses in the following exchange:

> THE COURT: But we had -- everyone was lined up to testify in this trial, and you-all elected not to call them. So I don't want the -- I want the record to be clear, if there is an adverse ruling and you do decided to appeal it, the record should be clear that the three witnesses that you intended to call were prepared to testify today and/or tomorrow but you-all had made a decision not to call those witnesses.

MR. HUTCHINSON: The people -- the people that we were using as witnesses -- that was on our witness list from the beginning become hostile as this week came.

THE COURT: Well, the point is, though, there's no evidence in front of me of that. I know that you're claiming they're hostile, but the point is they were prepared to come testify. So if you wanted to show that they were hostile or if there was a problem, you could have called them as a witness and then their hostility could have been explored in front of the jury or at least in front of me.

(*Trial Tr.* 24:11–25:8, *Excerpt from* Sept. 5, 2019 at 1:57 p.m.).

30. Thus, there is no merit to Plaintiff's contention that they were denied the right to call Whitmore and Criniti—or any witness—at trial, and no prejudice exists that would entitle Plaintiffs to receive a new trial.

**C. "Plaintiff Joseph Hutchinson was denied due process by being found guilty of threatening people by Judge Paul Farrell prior to any investigation or adjudication." (*Motion* 3).**

31. This Court has entered no order convicting Plaintiff Joseph Hutchinson of any crime.

32. To date, no order convicting Plaintiff Joseph Hutchinson of any crime associated with his actions during the pendency of this case has been entered by any Magistrate Judge or Circuit Judge in Cabell County.

33. Because no conviction order exists, no prejudice exists.

34. Accordingly, Plaintiffs' claim that Plaintiff Joseph Hutchinson was found guilty of threatening people does not warrant granting Plaintiffs a new trial.

**D. "Plaintiffs did make it clear through the testimony of Defendant Mark Underwood and Defendant Patty Jennings that the standard of duty of care for any attorney is to provide their clients with all information regarding their case. No expert was required as the email evidence and testimony of both Plaintiffs and Defendants Underwood and Jennings show that they did fall below the standard expected of any lawyer in the Defendants' position." (*Motion* 4).**

35. Plaintiffs claim that it is "standard practice for any attorney settling a case" to provide the client(s) "with a copy of the stipulation." (*Motion* 6).

36. Plaintiffs did not call an expert witness to testify at trial as to whether such action is indeed standard practice for an attorney.

37. Plaintiffs are not attorneys and they are not qualified to give expert opinions as to an attorney's standard of care.

38. Plaintiffs' choice not to call an expert to testify as to whether Defendants Underwood and Jennings complied with their duty of care in representing Plaintiffs was thoroughly examined in the *Judgment Order*. (*See Judgment Order* 7–8).

39. In the *Motion*, Plaintiffs have not cited to any law in support of their assertion that an expert was unnecessary.

40. This Court finds no reason to deviate from the reasoning and ruling set forth in the *Judgment Order* with regard to the necessity of expert testimony.

41. No prejudice exists that would justify granting a new trial on this issue.

E. **"The stipulation that settled the 2011 Court of Claims case which was entered into evidence and discussed at length during the trial, in the presence of the Jury, clearly stated the [Department of Highways] was responsible for the culvert and for the damage it caused to the Plaintiffs' property. Again, no expert needed. Evidence of the repair work done to the Plaintiffs' home and property was introduced in the form of photographs shown to the Jury." (*Motion* 5).**

42. Plaintiffs' choice not to call an expert with regard to the damage they claimed was the result of the Department of Highway's failure to maintain the culvert was thoroughly examined in the *Judgment Order*. (*See Judgment Order* 11–12).

43. In the *Motion*, Plaintiffs have not cited to any law in support of their assertion.

44. This Court finds no reason to deviate from the reasoning and ruling set forth in the *Judgment Order* with regard to the necessity of expert testimony.

45. No prejudice exists that would justify granting a new trial on this issue.

**F. "Defendants did receive improper benefit in the 2011 Court of Claims case settlement as they received 40% of the settlement." (*Motion* 5).**

46. The evidence Plaintiffs' presented at trial established that the Plaintiffs and executed a *Personal Injury Legal Services Agreement* in which Plaintiffs agreed that Defendant Underwood Law Office would receive 40% of any recovery as compensation for legal services provided. (*See Pls.' Ex.* 1, at ¶ 5).

47. It is undisputed that the portion of the settlement Defendants received was pursuant to the *Personal Injury Legal Services Agreement*.

48. As explained in the *Judgment Order*, "a cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority." (*Judgment Order* 6 (quoting *State ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W. Va. 687, 701–02, 520 S.E.2d 854, 868–69 (1999)).

49. Payment for the work Defendants performed did not constitute an improper benefit, and the acceptance of payment did not constitute an action outside the limits of Defendants.

50. Because the Court determined that Plaintiffs' cause of action was for professional malpractice rather than breach of fiduciary duty, whether Defendants received an improper benefit is irrelevant; however, as explained in the *Judgment Order*, even if the cause of action was for breach of fiduciary duty, "Plaintiffs introduced no evidence that Defendants received an improper benefit from representing them." (*Judgment Order* 6).

51. No prejudice exists that would justify granting a new trial on this issue.

**G. "Plaintiffs were never given the opportunity to find out if they would have achieved a better result rejecting the settlement in the 2011 Court of Claims case . . . . Plaintiffs would have absolutely succeeded in further claims against the DOH." (*Motion* 6).**

52.     Plaintiffs appear to argue they are entitled to a new trial because the Court erred in determining that Plaintiffs failed to produce any admissible evidence establishing Plaintiffs would have succeeded on further claims against the Department of Highways.

53.     This issue was thoroughly examined in the *Judgment Order*. (*See Judgment Order* 8–10).

54.     In the *Motion*, Plaintiffs have not cited to any law in support of their assertion.

55.     This Court finds no reason to deviate from the reasoning and ruling set forth in the *Judgment Order* with regard to proximate cause.

56.     No prejudice exists that would justify granting a new trial on this issue.

H.  **"Plaintiffs had evidence regarding the work necessary to repair damage caused by [Department of Highway]'s failure to maintain the culvert but were not allowed to enter it during trial."** (*Motion* 7).

57.     With regard to this claim, Plaintiffs do not specifically describe the evidence they allege they were not permitted to enter at trial and so the Court must speculate as to what Plaintiffs believe was wrongfully excluded.

58.     After Plaintiffs rested their case in chief, and after Defendants made their oral motion for judgment as a matter of law, Plaintiffs indicated that they intended to introduce a report prepared by Criniti after resting their case. (*See Trial Tr.* 6:18–19, *Excerpt from* Sept. 5, 2019 at 1:57 p.m.). The following exchange took place:

> MR. HUTCHINSON: On damages, you know, when we filed this case, all parties did receive estimates of damages and so forth, and we did have a witness list and -- going all the way back to when Mr. Underwood did represent us, your Honor, in the very first Court of Claims case, Mr. Folio, which is back behind us, was the -- was the gentleman that demanded the Triad Engineering report that Mark Underwood agreed to.
>
> Now, Bo Criniti is not here, but in the Court of Claims his credentials also were in the back of this, and this was -- this report was a $3,000 report that was --
>
> THE COURT: The report's not in evidence though, to my knowledge. Is it?

MR. SPITZ: No, your Honor.

MR. HUTCHINSON: Well --

MRS. HUTCHINSON: Because we wasn't certain if Mr. Folio was going to come or not.

THE COURT: The problem is you've rested your case, so I can only deal with what you've presented as evidence here today and yesterday, so anything that's not been admitted as an exhibit or any witnesses that you didn't call, I can't consider.

MR. HUTCHINSON: Well --

THE COURT: That includes things that you exchanged before we ever got here in this lawsuit with the other party. The only thing the jury can consider is what you've admitted in front of them.

MRS. HUTCHINSON: Your Honor, they objected every time I talked about damages.

THE COURT: Well, that's -- you need an expert to explain damages. You aren't qualified to give estimates of the repairs and things like that, so you've used the -- whatever that document is there.

MRS. HUTCHINSON: That's the Triad Engineering report.

THE COURT: That may have been what that was for, I don't know.

MRS. HUTCHINSON: That was what that was for, but we were going to introduce it because Mr. Folio had prior knowledge of it and --

THE COURT: But you didn't call him as a witness.

MR. HUTCHINSON: No, but they were calling him. I was going to use it on cross-examination.

MRS. HUTCHINSON: So we're not allowed to enter exhibits at all now?

THE COURT: Well, not right now.

MRS. HUTCHINSON: No, I mean, on cross-examination, can – and I'm just basing this off of what – again, what I've seen. When they cross-examined our witnesses, they entered exhibits.

THE COURT: You certainly can do that. The problem is we are at a stage right now of a -- what's called a directed verdict. It's a critical part of this trial. And you have rested and now they're -- if you don't meet certain burdens to proceed, then the case stops here and you don't ever get to the point of introducing things. That's why it's important to call your own witnesses and prove your case during your case in chief . . . .

(*Trial Tr.* 6:1–8:20, *Excerpt from* Sept. 5, 2019 at 1:57 p.m.).

59. Plaintiffs also indicated that they had in their possession estimates to fix their home.

(*See Trial Tr.* 21:11–15, *Excerpt from* Sept. 5, 2019 at 1:57 p.m.). Plaintiff Jennifer Hutchinson stated: "Further, I did try to, on the stand when I was giving my testimony, talk about the damages

to our home and estimates to fix, but I was objected to every time I brought up the word "damages."

(*Trial Tr.* 21:11–15, *Excerpt from* Sept. 5, 2019 at 1:57 p.m.).

60.    The Court responded, explaining:

And the reason for that is a person can't come in and just submit a bunch of estimates and say, "These are my damages," without having the experts or the people who did the evaluation come in and properly admit them in front of the jury and submit themselves to cross-examination by the other side, because obviously they're going to say, "Well, we don't think it would have cost that much," and then they would have had experts that would have said less.

(*Trial Tr.* 21:16–22:1, *Excerpt from* Sept. 5, 2019 at 1:57 p.m.).

61.    The Court finds that the report and receipts addressed above were properly excluded as Plaintiffs attempted to enter these into evidence *after* resting their case in chief.

62.    Accordingly, no prejudice exists that would justify granting a new trial on this issue.

I.    **"[H]ad this case gone to trial in October 2018 as originally scheduled, without the delays caused by frivolous tactics from the defense team, there would have been no Facebook post on 06 May 2019, therefore no interference by Judge Paul Farrell, and Plaintiffs would have been able to call their witnesses."** (*Motion* 8).

63.    As explained in the Court's November 5, 2018 *Order Denying Defendants' Motion to Dismiss Mark Underwood*, as of October 23, 2018, the record did not contain proof that Plaintiffs had served process on Defendant Underwood in a manner that would provide the Court with jurisdiction over him. (*See Order Den. Defs.' Mot. to Dismiss Mark Underwood* 3).

64.    At that time, the Court found that Defendant Underwood did "not desire to waive his challenge regarding lack of service of process and submit himself to the personal jurisdiction of this Court." (*Order Den. Defs.' Mot. to Dismiss Mark Underwood* 5).

65.    The Court also found, "Plaintiffs represented that they do not desire to proceed to trial against only Defendants Jennings and Underwood Law Office." (*Order Den. Defs.' Mot. to Dismiss Mark Underwood* 5).

66.     The Court chose not to dismiss the case against Defendant Underwood, instead ordering a continuance to allow Plaintiffs additional time to serve process upon Defendant Underwood. (*See Order Den. Defs.' Mot. to Dismiss Mark Underwood* 5).

67.     Plaintiffs did not serve process within the time provided by the Court, and the Court again allowed additional time for Plaintiffs to serve process rather than dismissing the case. (*See Order* 2, June 5, 2019 ("The Court next took up the Defendants' Motions to Dismiss all parties as a result of failure of service of process. The Court did find that service had not been perfected on any of the Defendants. Because of: (1) the continuation of the trial date; and (2) Plaintiffs' pro se status, however, the Court deemed it appropriate to allow the Plaintiffs another 90 days from the date of the hearing (or July 3, 2019) to perfect service on all the Defendants in this matter.").

68.     Had the Court granted Defendants' motion to dismiss Defendants, this case would not have proceeded to trial at all.

69.     Again, directly before the trial of this action began on September 4, 2019, the Court held a hearing to determine whether Defendant Underwood and Defendant Underwood Law Office should be dismissed for lack of service of process. (*See Order Den. Mot. to Dismiss* 1, Sept. 9, 2019).

70.     At that time, the Court ruled in Plaintiffs' favor, finding that Plaintiffs had successfully served process on Defendant Underwood and Defendant Underwood Law Office. (*See Order Den. Mot. to Dismiss* 4, 6–7, Sept. 9, 2019).

71.     Then, during trial on September 5, 2019, Plaintiffs filed *Plaintiffs Motion for Summary Judgement Due to Fraud on the Court*, alleging that in documents provided to them by Defendants, Plaintiffs had found copies of the summons and complaint they attempted to serve on Defendants in March 2017, and that Defendants had committed fraud by previously failing to

produce or acknowledge the existence of these documents. (*See Pls.' Mot. for Summ. J. Due to Fraud on the Ct.* 1).

72.     With regard to this motion, the Court explained,

> [I]t's not an appropriate motion for summary judgment and it wouldn't -- it still doesn't go back and affect any of my prior rulings with regard to service. We have painstakingly gone through that for almost two years, and the bottom line is, ultimately, the rulings were in your favor. . . . So I think, regardless of what you found in those documents, the issue was always whether or not service was effective service, not that there was a lack of effort that you were attempting to serve.
>
> So I'm going to deny the motion for summary judgment.

(*Trial Tr.* 9:13–10:2, *Excerpt from* Sept. 5, 2019 at 9:00 a.m.).

73.     All of the issues regarding service of process have been examined and ruled upon.

74.     The Court made no finding that Defendants or Defendants' counsel engaged in "frivolous tactics."

75.     This case was continued multiple times to allow Plaintiffs the opportunity to properly serve Defendants so that Plaintiffs could have their "day in court" and present their case to a jury. Plaintiffs ultimately did present their case to the jury.

76.     Accordingly, the delay, if it was indeed ordered in error, would only warrant granting Plaintiffs a new trial if the delay prejudiced Plaintiffs to the extent that they were unable to fully present their case to the jury.

77.     Plaintiffs' only assertion as to any possible prejudice stems from their own acts, i.e., the May 6, 2019 Facebook post. Plaintiffs state that if not for the Facebook post, "Plaintiffs would have been able to call their witnesses." (*Motion* 8).

78.     The law does not permit parties to benefit from prejudice of their own making.

79.     Furthermore, as established *supra*, every witness Plaintiffs called to testify at the trial appeared and testified.

80.     Thus, no prejudice exists, and Plaintiffs are not entitled to a new trial in connection with the various continuances ordered in this case.

Based on above-listed findings and conclusions, this Court **DENIES** *Plaintiffs' Motion for New Trial.*

This is a Final Order. This Order may be appealed to the Supreme Court of Appeals in accordance with Rule 72 of the West Virginia Rules of Civil Procedure and in the manner set forth in the Rules of Appellate Procedure.

The Clerk of this Court is directed to provide copies of this Order to the following: Joseph Todd Hutchinson & Jennifer Lynn Hutchinson, 6316 Aracoma Road, Huntington, WV 25705; Kevin A. Nelson, Esq. & Arie M. Spitz, Esq., Dinsmore & Shohl LLP, P.O. Box 11887, Charleston, WV 25339.

Entered this 31st day of October, 2019.

GREGORY L. HOWARD, JR., JUDGE

STATE OF WEST VIRGINIA
COUNTY OF CABELL
I, JEFFREY E. HOOD, CLERK OF THE CIRCUIT COURT FOR THE COUNTY AND STATE AFORESAID DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY FROM THE RECORDS OF SAID COURT ENTERED ON NOV - 1 2019
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS NOV - 1 2019
CLERK
CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

FILED

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

2019 OCT 31 PM 3: 47

J.E. WOOD
CLERK

JOSEPH TODD HUTCHINSON
JENNIFER LYNN HUTCHINSON,

    Plaintiffs,

v.

                    Civil Action No. 17-C-149
                    (Hon. Gregory L. Howard, Jr.)

MARK FOREST UNDERWOOD
PATRICIA JENNINGS
UNDERWOOD LAW OFFICE,

    Defendants.

## FINAL ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

On September 4, 2019 a jury trial began in this matter. During their case in chief, Plaintiffs called Defendants Mark Underwood and Patty Jennings as well as themselves as witnesses. Plaintiffs did not call any other witnesses during their case in chief. On September 5, 2019, Plaintiffs rested their case in chief, after which Defendants moved for Judgment as a Matter of Law pursuant to West Virginia Rule of Civil Procedure 50(a). Based upon the evidence proffered by Plaintiffs at trial, the arguments of counsel/the Parties, and the reasons stated on the record by the Court, the Court GRANTS Defendants' Motion for Judgment as a Matter of Law. The findings of fact and legal conclusions of the Court are set forth below.

### FINDINGS OF FACT

1.    **Overview of the case.**

This matter is a legal malpractice lawsuit that arises out of the Defendants representation of the Plaintiffs in a 2011 Court of Claims proceeding against the Department of Highways

("DOH"). The claim against DOH revolved around a culvert that Plaintiffs alleged was improperly maintained by DOH, which caused flooding on their property and resulted in damage to their house. The claim was settled for $85,000.00. Plaintiffs allege that Defendants improperly settled the case by executing a stipulation that released Plaintiffs' ability to bring future claims against the DOH that arise out of or relate to the culvert. Specifically, Plaintiffs allege (1) that they were not informed of the fact that the settlement would involve a release of future claims; (2) the failure to inform them of the release of future claims constitutes negligence or breach of fiduciary duty; (3) had they been informed of the fact that the settlement included a release of future claims, then they would not have agreed to the settlement; and (4) they have been damaged as a result of the settlement of their claim against the DOH.

2. **Pretrial rulings.**

Prior to the trial, on October 25, 2018, the Court entered an Order with respect to various pretrial motions. In this Order, the Court denied three different Motions by the Defendants in which they sought Summary Judgment on liability and on damages. In denying these Motions, the Court twice noted that "[t]he burden is on Plaintiffs to prove, by a preponderance of the evidence, all of the elements of their claim, and Plaintiffs will be permitted to put on any admissible evidence in support of their claim. Defendants should make timely objections at trial to evidence they believe is inadmissible." *See* October 25, 2018 Order.

3. **Evidence at trial with respect to liability.**

During the trial, numerous emails between Defendants and Plaintiffs concerning settlement negotiations and the terms of the settlement were introduced into evidence. Specifically, email chains between Defendants and Plaintiffs were introduced in which Plaintiffs authorized Defendants to make various settlement demands upon the DOH, as well as a January

6, 2014 email from Defendant Patty Jennings to the Plaintiffs outlining the terms of the settlement.

In the January 6, 2014 email, Ms. Jennings informed Plaintiffs that the settlement would be for $80,000.00 along with an additional $5,000 that would be specifically earmarked for Plaintiffs to use to hire a contractor of their choice to clean out the culvert (drain). In this email, Ms. Jennings also informed Plaintiffs that DOH would not clean out the culvert, which is why they were being paid an extra $5,000 to do so themselves.

Ms. Jennings testified that she believed that Plaintiffs understood from these emails, as well as numerous phone calls, that in connection with the settlement of the claim against the DOH over the culvert, Plaintiffs would be agreeing to not sue the DOH again in the future over the culvert. Defendant Mark Underwood also testified that it was his belief that Plaintiffs understood the terms of the settlement as a result of the copious emails and phone calls.

Plaintiffs testified that they did not understand that the settlement included a release of their ability to bring future claims against the DOH with respect to the culvert. Plaintiffs proffered evidence to show that in connection with the settlement, Ms. Jennings executed a stipulation on behalf of the Plaintiffs which released their ability to bring future claims. Plaintiffs likewise proffered evidence to show that a copy of this stipulation was not provided to Plaintiffs prior to settlement of their claim against DOH. The stipulation, however, was executed by Ms. Jennings on January 10, 2014 – after Ms. Jennings had explained the terms of the settlement in her email of January 6, 2014. Further, Plaintiffs admitted at trial that after Ms. Jennings' January 6 email they did not inform Defendants that they did not wish to proceed with settlement of the claim in accordance with the terms contained in the January 6 email.

**142**

Finally, Plaintiffs did not proffer any evidence with respect to the standard of care that is applicable to the Defendants' actions in this case, nor any evidence that the standard of care was breached. In particular, Plaintiffs did not call an expert to testify that the Defendants' communication of the terms of the settlement to the Plaintiffs fell below the standard expected of an ordinary and reasonable lawyer in the Defendants' position.

4. **Evidence at trial with respect to damages.**

At trial, Plaintiffs admitted that they were informed that $5,000 of the settlement was specifically earmarked for them to hire a contractor to clean out the culvert. Plaintiffs further admitted that they did not hire a contractor to clean out the culvert. And Plaintiffs did not put forward any expert testimony with respect to (1) whether the DOH's failure to maintain the culvert continues to cause damage to Plaintiffs' property; (2) what damages have been caused by the DOH's failure to maintain the culvert that are distinct from the damages alleged in the initial Court of Claims action against the DOH; (3) whether any damages from the DOH's failure to maintain the culvert would continue even if the culvert had been cleaned out by a contractor hired by Plaintiffs as required by the settlement; (4) whether any damages will continue in the future as a result of the DOH's failure to maintain the culvert; or (5) that Plaintiffs could have achieved a more favorable settlement with the DOH had they rejected the settlement agreement procured by Defendants.

Plaintiffs themselves testified about the flooding taking place on their property and the various construction work that they have paid to be performed upon their house. But while Plaintiffs contend that construction work on their house was necessary to shore up the foundation of the house due to erosion being caused by flooding, which in turn is being caused by DOH's

failure to maintain the culvert, no evidence (namely expert testimony) was proffered to link DOH's alleged failure to maintain the culvert to these alleged damages.

Likewise, and perhaps even more critically, Plaintiffs did not proffer any evidence to show that if they had rejected the $85,000.00 settlement, then they would be better off. No evidence was proffered to show that Plaintiffs would have achieved a more favorable settlement in their initial claim against the DOH; and no evidence was proffered to show that if Plaintiffs had maintained the ability to bring future claims against the DOH that such claims would have been successful. Again, no expert testimony was offered on these issues.

Finally, no evidence was submitted as to the value of the work performed on Plaintiffs' property, which Plaintiffs' claim as damages, nor was any evidence submitted as to the amount of diminution in value of the Plaintiffs' property, which Plaintiffs claim as damages. Again, no expert testimony was offered on these issues.

## CONCLUSIONS OF LAW

1.    **Rule 50(a) Standard for Judgment as a Matter of Law.**

Rule 50(a)(1) states: If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

"Upon a motion for [pre-verdict judgment as a matter of law], all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." Syl. Pt. 4, *Norfolk S. Ry. Co. v. Higginbotham*, 228 W. Va. 522, 721 S.E.2d 541

(2011) (citing Syllabus point 5, *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973) and Syl. pt. 1, *Stanley v. Chevathanarat*, 222 W. Va. 261, 664 S.E.2d 146 (2008)).

In reviewing an order granting Judgment as a Matter of Law, the West Virginia Supreme Court "after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed." Syl. Pt. 1, *Spencer v. McClure*, 217 W. Va. 442, 444, 618 S.E.2d 451, 453 (2005) (citing Syllabus Point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996)." Syllabus Point 5, *Smith v. First Community Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002)).

2.      **Plaintiffs' cause of action and the necessary elements of such cause of action.**

Plaintiffs maintain that their cause of action against Defendants is one for breach of fiduciary duty, not professional malpractice. The Court finds that Plaintiffs' cause of action is professional malpractice, not breach of fiduciary duty. This is because "a cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority." *State ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W. Va. 687, 701-02, 520 S.E.2d 854, 868-69 (1999) (concurring opinion) (citing *Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992)). Typically, breach of fiduciary duty claims focus upon whether an attorney gained an improper benefit from representing a client. *See* Restat 3d of the Law Governing Lawyers, § 16 (Comment e). In this case, Plaintiffs have introduced no evidence that Defendants received an improper benefit from representing them.

Moreover, the cause of action against an attorney who allegedly fails to exercise due care with respect to communicating the terms of a settlement to a client, or who settles a case without

the client's authority, has been recognized as being one for legal malpractice. *See* 7 Am Jur 2d Attorneys at Law § 205.[1] As discussed below, however, even if Plaintiffs' cause of action is for breach of fiduciary duty and not professional malpractice, Plaintiffs' cause of action is still subject to judgment as a matter of law.

With respect to a cause of action for legal malpractice, the necessary elements are:

(1) the attorney's employment;

(2) his/her neglect of a reasonable duty; and

(3) that such negligence resulted in and was the proximate cause of loss to the plaintiff.

Syl. Pt. 1, *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (2005).

Further, "[i]n an attorney malpractice action, proof of the attorney's negligence alone is insufficient to warrant recovery; it must also appear that the client's damages are the direct and proximate result of such negligence." *Id.* at Syl. Pt. 3 (citing Syllabus point 2, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990)).

Finally, "[d]amages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence." *Id.* at Syl. Pt. 4 (citing Syllabus point 3, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990)).

3.    **Liability analysis.**

Plaintiffs did not introduce evidence at trial as to what reasonable duty the Defendants neglected; nor did Plaintiffs introduce evidence at trial to demonstrate such neglect. Specifically, Plaintiffs did not call any expert witness to testify as to the standard of care that is applicable to

---

[1] The West Virginia Supreme Court has previously relied upon AM Jur 2d Attorneys at Law when analyzing the law that applies to attorneys. *See e.g. Estate of Robinson v. Randolph Cty. Comm'n*, 209 W. Va. 505, 549 S.E.2d 699 (2001); *State ex rel. Judicial Investigation Comm'n v. Putnam Cty. Bd. of Ballot Comm'rs*, 237 W. Va. 99, 785 S.E.2d 805 (2016); *Lawyer Disciplinary Bd. v. Vieweg*, 194 W. Va. 554, 461 S.E.2d 60 (1995); and *W. Va. Canine Coll. v. Rexroad*, 191 W. Va. 209, 444 S.E.2d 566 (1994).

an attorney's communication of settlement terms to a client. Nor did Plaintiffs introduce evidence, or ask the Court to take judicial notice, of any West Virginia Rules of Professional Conduct or other laws, rules, or regulations, that might apply to such communications.

Evidence was introduced to show that Defendants did in fact communicate the terms of the proposed settlement agreement. But whether these communications fell below the standard of care of that must be used by a reasonable lawyer when explaining the terms of a settlement agreement to a client is an issue to which Plaintiffs' proffered no evidence. Since Plaintiffs did not introduce evidence as to what this standard is, and likewise did not introduce evidence to show that Defendants failed to meet this standard, Plaintiffs have failed to introduce a legally sufficient evidentiary basis for a reasonable jury to find in their favor with respect to the second element of a legal malpractice cause of action: "neglect of a reasonable duty." Syl. Pt. 1, *Scharf*, 217 W. Va. 684, 619 S.E.2d 197.

It is for these same reasons that Plaintiffs have failed to introduce a legally sufficient evidentiary basis for a reasonable jury to find in their favor with respect to the second element of a breach of fiduciary duty cause of action: the breach of a fiduciary duty. *See Vieweg*, 205 W. Va. 687, 701-02, 520 S.E.2d 854, 868-69 (concurring opinion) (citing *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 3 Cal. Rptr. 2d 236, 240 (1991)). Namely, there is no evidence to establish what the fiduciary duty is in the context of this case and no evidence to show that Defendants' actions fell below the standard of care imposed by such fiduciary duty.

4.      **Proximate cause analysis.**

"In an attorney malpractice action, proof of the attorney's negligence alone is insufficient to warrant recovery; it must also appear that the client's damages are the direct and proximate

result of such negligence." Syl. Pt. 3, *Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (citing Syllabus point 2, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990)).

In this case, Plaintiffs contend (1) that Defendants negligently failed to inform them of the fact that the settlement included a release of future claims against the DOH that arise out of or relate to the culvert, and (2) that if they had been informed of this release, then they would not have consented to the settlement. As such, part of the necessary proof of Plaintiffs' cause of action is whether the alleged negligent failure by the Defendants to inform Plaintiffs of the release of future claims proximately caused any damages to Plaintiffs.

Typically in legal malpractice actions, this issue is referred to as the "case within the case." *See Rubin Res., Inc. v. Morris*, 237 W. Va. 370, 375, 787 S.E.2d 641, 646 (2016). Here, the issue is what would have happened if the Plaintiffs had rejected the settlement? *Morris*, 237 W. Va. 370, 374, 787 S.E.2d 641, 645 ("in both litigation and transactional malpractice action, "the crucial causation inquiry is what would have happened if the defendant attorney had not been negligent?"). Thus, in order to prove that Defendants' alleged negligence proximately caused damages to Plaintiffs, Plaintiffs must prove that they would have obtained a better result in their claim against the DOH had they rejected the settlement.

Plaintiffs, however, did not put on any evidence to show what would have happened had they rejected the settlement. No evidence was proffered to show that a larger settlement could have been obtained; that a settlement without a release of future claims could have been obtained; or that a trial would have given a better result than the settlement. Further, Plaintiffs did not put on any evidence to show that, but for the release contained in the settlement, they could have succeeded in any future claims against the DOH.

Since Plaintiffs did not introduce evidence to establish that the Defendants' alleged negligent failure to inform them that the settlement contained a release of future claims proximately caused them damages, Plaintiffs have failed to introduce a legally sufficient evidentiary basis for a reasonable jury to find in their favor with respect to the third element of a legal malpractice cause of action: "that such negligence resulted in and was the proximate cause of loss to the plaintiff." Syl. Pt. 1, *Scharf*, 217 W. Va. 684, 619 S.E.2d 197.

It is for these same reasons that Plaintiffs have failed to introduce a legally sufficient evidentiary basis for a reasonable jury to find in their favor with respect to the third element of a breach of fiduciary duty cause of action: damage proximately caused by the breach. *See Vieweg*, 205 W. Va. 687, 701-02, 520 S.E.2d 854, 868-69 (concurring opinion) (citing *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 3 Cal. Rptr. 2d 236, 240 (1991)). Namely, there is no evidence to establish that Defendants' alleged negligent failure to inform Plaintiffs that the settlement included a release of future claims proximately caused Plaintiffs to sustain damages.

5.      **Damages analysis.**

"Damages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence." Syl. Pt. 4, *Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (citing Syllabus point 3, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990)).

In this case, Plaintiffs did not put on any evidence as to (1) the value of the construction work they claim was necessitated by the DOH's failure to maintain the culvert; (2) the value of the construction work they claim will be needed in the future due to the DOH's failure to maintain the culvert; (3) the current diminution in value of their property as a result of the

DOH's failure to maintain the culvert; or (4) any future diminution in value of their property as a result of the DOH's failure to maintain the culvert.

As Plaintiffs allege that they have been damaged due to the fact that they no longer have the ability to bring future claims against the DOH related to the culvert, in order to prove up such damages the Plaintiffs needed to introduce evidence as to what recovery they could have made against the DOH in such future claims. Such recovery would be premised upon the value of the repairs to their property Plaintiffs needed to make as a result of the DOH's failure to maintain the culvert or premised upon the diminution in value of their property due to the DOH's failure to maintain the culvert. Plaintiffs, however, did not put on any evidence as to the value of such construction work or the amount of such diminution.

In addition, Plaintiffs did not put on any evidence, via expert testimony, to prove that such repairs or diminution in value is caused by the DOH's failure to maintain the culvert. As discussed above, Plaintiffs theory is that (1) the DOH's failure to maintain the culvert is causing flooding on their property; (2) the flooding is causing soil erosion; (3) the soil erosion is causing damage to the foundation of their house; (4) the damage to the foundation of the house is causing damage throughout the entire house. But Plaintiffs did not put on any expert testimony to substantiate this theory via admissible evidence.

Since Plaintiffs did not introduce evidence to establish (1) that repairs to their property, or a diminution in value of their property, was caused by the DOH's failure to maintain the culvert; or (2) the value of such repairs or diminution in value, Plaintiffs have failed to introduce a legally sufficient evidentiary basis for a reasonable jury to find in their favor with respect to proof of damages – which is part of the third element of a legal malpractice cause of action: "that

such negligence resulted in and was the proximate cause of loss to the plaintiff." Syl. Pt. 1, *Scharf*, 217 W. Va. 684, 619 S.E.2d 197.

It is for these same reasons that Plaintiffs have failed to introduce a legally sufficient evidentiary basis for a reasonable jury to find in their favor with respect to the third element of a breach of fiduciary duty cause of action: damage proximately caused by the breach. *See Vieweg*, 205 W. Va. 687, 701-02, 520 S.E.2d 854, 868-69 (concurring opinion) (citing *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 3 Cal. Rptr. 2d 236, 240 (1991)).

## ORDER OF THE COURT

For all of these reasons, the Court GRANTS Defendants' Motion for Judgment as a Matter of Law. The Court ORDERS that JUDGEMENT is hereby GRANTED IN FAVOR OF THE DEFENDANTS. It is ORDERED and ADJUDGED that Plaintiffs' causes of action against Defendants are hereby dismissed on the merits, and Plaintiffs are ordered to pay Defendants their costs of action as determined by the Court pursuant to West Virginia Rule of Civil Procedure 54. Also pursuant to West Virginia Rule of Civil Procedure 54, this Judgement Order is a final and appealable order. All objections overruled during trial, and Plaintiffs' objection to this Order, are noted.

The CLERK is ORDERED to tax the costs within 10 days after judgment is entered and to send a copy of the bill of costs to each party affected thereby.

The CLERK is further ORDERED to provide a copy of this ORDER to counsel/parties of record.

ENTERED this _____21st_____ day of October 2019.

_____
Honorable Gregory L. Howard, Judge

STATE OF WEST VIRGINIA
COUNTY OF CABELL
I, JEFFREY E. HOOD, CLERK OF THE CIRCUIT
COURT FOR THE COUNTY AND STATE AFORESAID
DO HEREBY CERTIFY THAT THE FOREGOING IS A
TRUE COPY FROM THE RECORDS OF SAID COURT
ENTERED ON ___OCT 21 2019___
GIVEN UNDER MY HAND AND SEAL OF SAID COURT
THIS ___OCT 21 2019___

Prepared by:

Kevin A. Nelson, Esquire (WVSB #2715)
Arie M. Spitz (WVSB # 10867)
DINSMORE & SHOHL LLP
P.O. Box 11887
Charleston, WV 25339
304-357-0900
kevin.nelson@dinsmore.com

*Counsel for Defendants Mark Forest Underwood,*
*Patricia Jennings, and Underwood Law Office*